TODD M. SCHNEIDER (SBN 158253)
tschneider@schneiderwallace.com
SCHNEIDER WALLACE
COTTRELL BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

Todd S. Collins (*pro hac vice* application to be filed)
tcollins@bm.net
Ellen T. Noteware (*pro hac vice* application to be filed)
enoteware@bm.net
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875 3000
Facsimile: (215) 875 4604

Ann Miller (*pro hac vice* application to be filed)
ANN MILLER, LLC
The Benjamin Franklin
834 Chestnut Street, Suite 206
Philadelphia, PA 19107
Telephone: (215) 238 0468
Facsimile: (215) 574 0699

Kurt Olsen (*pro hac vice* application to be filed)
KLAFTER OLSEN & LESSER, LLP
1250 Connecticut Ave., N.W., Suite 200
Washington, DC 20036
Telephone: (202) 261-3553
Facsimile: (202) 261-3533

Jeffrey Klafter (*pro hac vice* application to be filed)
Seth Lesser (*pro hac vice* application to be filed)
KLAFTER OLSEN & LESSER, LLP
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone: (914) 934-9200
Facsimile: (914) 934-9200

Plaintiffs' Counsel

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Diana Alexander-Jones, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WAL-MART STORES, INC., a Delaware Corporation; the Wal-Mart Retirement Plans Committee; and JOHN/JANE DOES 1-15,<br><br>Defendants. | Case No.: CV 10 3005<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974** |

---

COMPLAINT
ALEXANDER-JONES, ET AL. V. WAL-MART STORES, INC., ET AL.

Plaintiff, Diana Alexander-Jones, individually and on behalf of all those similarly situated, by and through her attorneys, hereby alleges as follows:

## I. <u>NATURE OF ACTION</u>

1. This is a class action brought on behalf of the Wal-Mart Profit Sharing and 401(k) Plan (the "Plan"), pursuant to §§ 502 (a)(2) and (a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(2) and (a)(3), against the fiduciaries of the Plan, a defined contribution 401(k) retirement plan and profit sharing plan sponsored by Wal-Mart Stores, Inc. ("Wal-Mart" or the "Company").

2. Plaintiff's claims arise from the failure of Defendants, who are fiduciaries of the Plan, to act solely in the interests of the Plan's participants and beneficiaries, as well as Defendants' failure to exercise all the required skill, care, prudence and diligence in administering the Plan and the Plan's assets during the period July 1, 2004 to the present (the "Class Period"). Specifically, Plaintiff alleges that Defendants participated in a conspiracy, or at the very least failed to take any corrective action, concerning Wal-Mart's underpayment of retirement benefits to female hourly employees of Wal-Mart who participated in the Plan during the Class Period. Such underpayment occurred pursuant to systemic gender discrimination prevalent at Wal-Mart for decades.

3. This action, brought on behalf of the Plan, seeks to recover tens or hundreds of millions of dollars of retirement savings that should have been, but were not, paid to the Plan as a result of Wal-Mart's illegal underpayment and suppression of employee wages due to gender discrimination.

4. As more fully explained below, the Plan provides that Wal-Mart shall make both 401(k) and profit sharing contributions to the Plan each year. These contributions are equal in amount to a specified percentage of the annual "regular salary or wages" of Wal-Mart's employees who participate in the Plan. Although Wal-Mart publicly proclaimed that it was contributing specified percentages of employee wages to the Plan each year, in reality Wal-Mart underpaid its contributions to the Plan by wrongfully failing to promote and wrongfully underpaying female Plan participants. By improperly lowering the total amount of wages female Wal-Mart employees received, the Company, with the other Defendants' complicity, improperly reduced the total amount of Plan assets and, in turn, lowered the amount of retirement and profit sharing benefits hourly workers received.

5. Wal-Mart willfully and intentionally conspired to unlawfully underpay the wages of a large segment of its hourly employee population by engaging in illicit policies and practices that discriminated against women based on their gender. Not only did such illicit practices improperly suppress Wal-Mart employees' wages, they also improperly reduced hourly workers' retirement savings. This occurred because Wal-Mart's illegal suppression of employees' wages reduced the "regular salary or wages" on which Wal-Mart calculated its Plan contributions. This action seeks relief for the Plan against Defendants for their breaches of ERISA fiduciary duties in connection with Wal-Mart's underpayment of its promised contributions to the Plan.

7. This action seeks relief from Defendants, as fiduciaries of the Plan, to make the Plan whole for the losses suffered as a result of Defendants' failure to discharge their fiduciary obligations. Because the violations alleged in this Complaint caused the Plan (and not just individual participants) to suffer losses, and because ERISA authorizes a Plan participant to sue for plan wide relief for breaches of fiduciary duty, Plaintiff brings this action on behalf of herself and on behalf of all Plan participants and beneficiaries during the Class Period to recover losses to the Plan pursuant to ERISA § 409, 29 U.S.C. § 1109, as well as for other relief for the Plan.

8. This action is brought on behalf of the Plan and seeks to recover losses to the Plan for which Defendants are personally liable pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109, and 1132(a)(2). In addition, under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff seeks other equitable relief from Defendants, including, without limitation, injunctive relief and, as available under applicable law, constructive trust, restitution, equitable tracing, and other monetary relief.

9. In Count I, Plaintiff alleges that Defendants breached their fiduciary duties of prudence and loyalty to the Plan's participants in violation of ERISA by failing to act solely in the interests and for the exclusive purpose of Plan participants. In Count II, Plaintiff alleges that Defendants breached their fiduciary duties by failing to disclose important information to participants and beneficiaries of the Plan. Count III alleges that Defendants breached their duties and responsibilities as co fiduciaries by failing to prevent breaches by other fiduciaries of their duties of prudent and loyal management, and complete and accurate communication.

10. ERISA §§ 409(a) and 502(a)(2) authorize participants such as Plaintiff to sue in a

2
COMPLAINT
JONES, ET AL. v WAL-MART STORES, INC. ET AL

representative capacity for losses suffered by the Plan as a result of breaches of fiduciary duty. Pursuant to that authority, Plaintiff brings this action as a class action under Fed. R. Civ. P. 23 on behalf of all participants and beneficiaries of the Plan.

11. In addition, because Plaintiff's claims are based, in part, on documents solely in Defendants' possession, certain of Plaintiff's allegations are by necessity upon information and belief. At such time as Plaintiff has had the opportunity to conduct discovery, Plaintiff will, to the extent necessary and appropriate, amend this Complaint, or, if required, seek leave to amend to add such other additional facts as are discovered that further support Plaintiff's claims.

## II. JURISDICTION AND VENUE

12. This is a civil enforcement action for breach of fiduciary duty brought pursuant to ERISA § 502(a), 29 U.S.C. 1132(a). This Court has original, exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

13. ERISA provides for nationwide service of process. ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). All Defendants are residents of the United States, and the Court therefore has personal jurisdiction over them. This Court also has personal jurisdiction over Defendants pursuant to Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure because Defendants are each subject to the jurisdiction of a court of general jurisdiction in the state of California.

14. This Court has personal jurisdiction over Defendants because each of them, directly or indirectly and/or through their subsidiaries, related entities, or agents, is doing business in the state of California.

15. Venue is proper in this judicial district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan was administered in this district, some of the fiduciary breaches for which relief is sought occurred in this district, and one or more of Defendants may be found in this district. Venue is also proper in this district pursuant to 28 U.S.C. § 1391, because Wal-Mart systematically and continuously does business in this district and because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

## III. PARTIES

16. Plaintiff, Diana Alexander-Jones, has been an hourly worker employed by Wal-Mart.

Plaintiff Alexander-Jones is a resident of Pennsylvania. At all relevant times, Plaintiff was a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), whose retirement savings have been invested in the Plan. Throughout the period of her employment at Wal-Mart, Plaintiff has been relegated to positions traditionally assigned to female employees. As a result of her gender, she has been denied opportunities for advancement and higher pay.

17. Defendant Wal-Mart Stores, Inc. ("Wal-Mart" or the "Company") is a Delaware corporation headquartered in Bentonville, Arkansas. Wal-Mart operates thousands of stores throughout the United States. Wal-Mart's annual sales last year exceeded $400 billion. The Company employed approximately 2.1 million employees worldwide as of the end of last year, including approximately 1.4 million employees in the United States. Wal-Mart has been at all relevant times a fiduciary of the Plan within the meaning of ERISA.

18. Defendant the Wal-Mart Retirement Plans Committee (the "Committee") is a "Named Fiduciary" of the Plan pursuant to the provisions of the Plan and has been responsible for managing the Plan during the Class Period.

19. The members of the Committee who served during the Class Period are named fictitiously, as Defendants John/Jane Does 1-15. Once their identities are ascertained, Plaintiffs will seek leave to join them under their true names.

### IV. THE PLAN

20. The Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). The Plan is an "eligible individual account plan" within the meaning of ERISA § 407(d)(3), 29 U.S.C. § 1107(d)(3), and it is also a "qualified cash or deferred arrangement" within the meaning of I.R.C. § 401(k), 26 U.S.C. § 401(k).

21. The Plan is a legal entity that can sue and be sued. ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1). In a breach of fiduciary duty action such as this, however, the Plan is neither defendant nor plaintiff. Rather, pursuant to ERISA § 409, 29 U.S.C. ERISA § 1109, and the law interpreting it, the relief requested in this action is for the benefit of the Plan and its participants and beneficiaries.

22. ERISA requires that every employee benefit plan be "established and maintained pursuant to a written instrument." ERISA § 402(a)(1), 29 U.S.C. ERISA § 1102(a)(1). Wal-Mart

established the Plan as a benefit for its employees, and Wal-Mart is the "sponsor" of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

23. The Wal-Mart Stores, Inc. Profit Sharing Plan (the "Profit Sharing Plan") was established in 1971 as an employee stock ownership plan that invests primarily in Wal-Mart stock. Wal-Mart established the Plan on February 1, 1997, under the name of the Wal-Mart Stores, Inc. 401(k) Retirement Savings Plan. The Plan was amended, effective October 31, 2003, to merge the assets of the Profit Sharing Plan applicable to United States participants with the Plan. In connection with the merger, the Plan was renamed Wal-Mart Profit Sharing and 401(k) Plan.

24. The responsibility for management and administration of the Plan is vested in the Committee. Committee members are appointed by a committee of the Wal-Mart Board of Directors.

25. At all relevant times, the Plan had two separate components: (1) a contributory component, which consisted of participant contributions to the 401(k) component of the Plan; and (2) employer contributions to both the 401(k) and Profit Sharing components.

26. All eligible Wal-Mart employees may participate in the Plan and may elect to contribute up to a specified percentage (not to exceed a particular dollar amount, in accord with IRS requirements) of their wages to the 401(k) component of the Plan. Regardless of whether an employee contributes to the Plan, he or she is entitled to receive a portion of the Company's 401(k) contributions and Profit Sharing contributions, if otherwise eligible. To be eligible to receive Company contributions, an employee must complete at least 1,000 hours of service during the relevant Plan year and be employed on the last day of that Plan year.

27. Although, technically, Wal-Mart's contributions to the Plan are discretionary and can vary from year to year, at the end of each Plan year the Board of Directors of the Company, or its authorized committee or delegate, has determined that the Company will contribute particular amounts to the Plan. Each year, the Company's contributions for each employee are based on a percentage of the employee's wages for the Plan year. For Plan year ended January 31, 2008, Wal-Mart announced that it was contributing 2 percent of eligible participants' wages as the Company's Profit Sharing contribution to the Plan, and 2 percent of such wages as the Company's 401(k) contribution to the Plan. The 2008 Summary Plan Description ("SPD") provides:

> At the end of each plan year, Wal-Mart determines the amount of its contribution (if any) for the plan year. The contribution will be a percentage of your pay while you were a participant for such plan year
> . . . .
>
> Currently, Wal-Mart anticipates making a contribution from 0 percent to 2 percent of your pay to your Profit Sharing Account and a contribution of 0 percent to 2 percent of your pay to your Company-Funded 401(k) Account. . . .

2008 Associate Guide at p. 211.

28. Plan participants are immediately vested in Wal-Mart's contribution to their 401(k) Accounts, and vested over time in Wal-Mart's contributions to their Profit-Sharing Accounts.

## V. FIDUCIARY STATUS OF THE DEFENDANTS

29. ERISA requires that every Plan provide for one or more "named fiduciaries" who will have "authority to control and manage the operation and administration of the Plan." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1). The person named as the "administrator" in the plan instrument is automatically a named fiduciary, and in the absence of such a designation, the sponsor is the administrator. ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

30. ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), but also any other persons who actually act as fiduciaries, perform fiduciary functions, or hold fiduciary authority. ERISA makes a person a fiduciary "to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such Plan . . . or has any discretionary responsibility in the administration of such Plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

31. Each of the Defendants was a fiduciary with respect to the Plan and owed fiduciary duties to the Plan and participants under ERISA in the manner and to the extent set forth in the Plan's documents, through their conduct, and under ERISA. As fiduciaries, Defendants were required by ERISA §404(a)(1), 29 U.S.C. § 1104(a)(1), to manage and administer the Plan and the Plan's assets solely in the interests of the Plan's participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

HEIDER WALLACE RELL BRAYTON ECKY LLP

32. Pursuant to the Plan's documents, Defendant Wal-Mart is a fiduciary within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(I). Wal-Mart, at all applicable times, exercised control over the activities of its officers and employees that performed fiduciary functions with respect to the Plan, including the Committee, and could hire, terminate and replace such employees at will. Wal-Mart is thus responsible for the activities of its officers and employees through principles of agency and *respondeat superior* liability.

33. Finally, as a matter of corporate law, Wal-Mart is imputed with the knowledge that its employees and the other Defendants had of the misconduct alleged herein, even if not expressly communicated to Wal-Mart.

34. Consequently, in light of the foregoing duties, responsibilities and actions, Wal-Mart was both a named fiduciary of the Plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), and a *de facto* fiduciary within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercised discretionary authority or discretionary control respecting the management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary responsibility in the administration of the Plan.

35. Pursuant to the Plan's documents, during the Class Period, the Committee served as the "named fiduciary" of the Plan as that term is defined under ERISA. As the Named Fiduciary of the Plan, the Committee is generally responsible for the management, interpretation, and administration of the Plan, including, but not limited to, eligibility determinations, investment policies, benefit payments and other functions required, necessary, or advisable to carry out the purpose of the Plan.

36. Consequently, in light of the foregoing duties, responsibilities and actions, the Committee Defendants were both named fiduciaries of the Plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), and *de facto* fiduciaries within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that they exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

37. ERISA permits fiduciary responsibilities to be shared among various individuals and entities. Given ERISA's functional concept of a fiduciary, absent full discovery it is impossible to know

which fiduciaries exercised which functions. Based on the information available at this juncture, the Defendants' fiduciary responsibilities were at least partially allocated among Wal-Mart and the Committee and its members.

38. ERISA mandates that plan fiduciaries owe a duty of loyalty to the plan and its participants, which includes the duty to act "solely in the interest" of plan participants and beneficiaries and for the "exclusive purpose" of providing plan benefits and defraying reasonable expenses of plan administration. ERISA also requires that plan fiduciaries speak truthfully to the plan and its participants when communicating with them. A fiduciary's duty of loyalty to plan participants under ERISA includes an obligation not to materially mislead, or knowingly allow others to materially mislead, plan participants and beneficiaries. Moreover, ERISA requires plan fiduciaries to act with the "care skill prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." ERISA § 404(a)(1); 29 U.S.C. §1332(a)(1).

## VI. **FACTUAL ALLEGATIONS**

39. Throughout the Class Period, Defendants made or oversaw Company contributions to the Plan that were lower in amount than the contributions that Wal-Mart had committed to Plan participants that it would contribute to the Plan. Wal-Mart claimed that it was contributing certain percentages of Plan participants' salaries and wages. In reality, the amounts Wal-Mart contributed were materially less than what was truly owed to Plan participants, because Wal-Mart calculated its Company contributions based on base wages that were suppressed due to the Company's rampant gender discrimination.

40. Wal-Mart's gender discrimination and related failures have been widespread throughout the Company and throughout the United States during the past decade. Since at least July 1, 2004, Wal-Mart has created and implemented a system that discriminates and underpays its female hourly employees nationwide by denying them promotions, coveted job assignments and training and by underpaying them. The work performed by Plaintiff and the Class Members for which they were not properly compensated was for the benefit of Wal-Mart and was not *de minimis* or incidental.

41. On information and belief, Plaintiffs understand that female employees are paid less than their male counterparts even though they perform substantially similar work, and even though female

1  employees have similar or greater skills and experience.

2      42.    On information and belief, Plaintiff understands that Wal-Mart engages in discriminatory
3  assignment patterns that heighten pay disparities between the genders.

4      43.    Specifically, although female employees comprise more than 72% of hourly sales
5  employees, only one third of store management positions are held by female employees. By contrast,
6  male employees, who comprise fewer than 28% of hourly employees, hold most of the management
7  positions. Management positions pay higher wages than hourly sales positions.

8      44.    The management positions held by women are typically lesser paid assistant store
9  management positions. Upon information and belief, throughout the past decade, women have held
10 fewer than 10% of Store Manager positions, fewer than 4% of District Manager positions, and few if
11 any Regional Manager positions at the Company.

12     45.    Additionally, male and female employees are not distributed randomly among store
13 departments. Male employees are disproportionately assigned to departments, such as hardware,
14 electronics, furniture, guns and garden, where employees are paid higher wages than in the departments
15 to which female employees are disproportionately assigned (cashier, health and beauty aids, toys,
16 housewares).

17     46.    Male employees are more likely than female employees to obtain "cross-training" in
18 other departments or to receive training and support to enter into departments that would facilitate their
19 advancement.

20     47.    The pattern of unequal assignments, pay, training and advancement opportunities is not
21 the result of random, non-discriminatory factors, but rather it is the result of a pattern and practice of
22 intentional discrimination based on gender. On information and belief, Wal-Mart lags behind other
23 retail competitors in the promotion and compensation of women. The policies and practices that result in
24 Wal-Mart's disproportionate treatment and underpayment of female employees include:

25     a.    Failure to post consistent job and placement openings to ensure employees have
26         equal notice of and opportunity to seek advancement;
27     b.    Reliance on arbitrary and subjective criteria used by the group of managers,
28         predominantly male, who make assignments, training, promotion and pay decisions;

    c.    Reliance on gender stereotyping in making employment decisions;

    d.    "Grooming" male employees for advancement, favorable job placements and training opportunities;

    e.    Consistently paying lower wages to female hourly employees than similarly situated male employees;

    f.    Providing less training and support to female employees than male employees;

    g.    Retaliating against female employees who complain about Wal-Mart's treatment of female employees at the Company.

48. Currently, female workers at Wal-Mart and Sam's Club are pursuing a class action lawsuit in this Court, *Dukes v. Wal-Mart Stores*, C-01-2252 (MJJ), that charges that Wal-Mart discriminates against female employees nationwide in making promotions, job assignments, pay decisions and training, and retaliates against women who complain about such practices. On June 24, 2004, this Court certified a national class of female employees who worked for the retail stores since December 26, 1998. On April 26, 2010, the Ninth Circuit Court of Appeals largely affirmed the district court's class certification ruling.

49. Wal-Mart knew or should have known that it was underpaying female employees, who constitute the bulk of its hourly workforce.

50. Although Plan participants exercised due diligence during the Class Period and had diligently sought to protect themselves from unlawful practices, they could not have discovered the improper and illegal discriminatory practices by the exercise of due diligence because of the affirmative, deceptive and willful practices and techniques by Wal-Mart to avoid detection and affirmatively conceal such practices.

51. Wal-Mart has never revealed the existence of its discriminatory practices. Moreover, when confronted with evidence of its wrongdoing, Wal-Mart has actively sought to conceal its misconduct by mounting an expensive legal campaign, denying that it failed to compensate employees.

52. Throughout the Class Period, in communications with Plan participants, Defendants addressed the issue of Company contributions to the Plan, but failed to disclose the significant underpayment of Company contributions.

53. As Plan fiduciaries, Defendants knew or should have known the correct amount of wages that Plan participants had earned. At the very least, as Plan fiduciaries, Defendants should have investigated the allegations of wage and salary improprieties and insisted that the Company contribute all amounts due to the Plan.

54. Even though Defendants knew or should have known these facts, Defendants failed to take any meaningful ameliorative action to protect the Plan and its participants from the improper suppression of their retirement and profit sharing benefits as a result of Defendants' intentional miscalculation and suppression of employer contributions to the Plan.

55. As a result of the knowing and willful fraudulent concealment of illegal gender discrimination practices, Plaintiffs assert the tolling of the applicable statute of limitations with respect to any claims and rights of action by Plaintiff and the members of the Class.

## VII. CLAIMS FOR RELIEF UNDER ERISA

56. Plaintiff seeks relief for Defendants' breaches of fiduciary duty under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). ERISA § 502(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109. ERISA § 409 further requires that "any person who is a fiduciary who breaches any of the duties imposed upon fiduciaries to make good to such plan any losses to the plan." ERISA § 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate."

57. Plaintiff also seeks relief, as an additional basis of liability, under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which authorizes a plan participant to bring a civil action for breach of fiduciary duty against fiduciaries and certain non fiduciaries for appropriate equitable relief.

58. ERISA imposes strict fiduciary duties upon plan fiduciaries. The fiduciary duties contained in ERISA § 404(a), 29 U.S.C. § 1104(a)(1)(A) and (B) are referred to as the duty of loyalty, exclusive purpose and prudence are the "highest known to law".

59. ERISA § 404(a)(1)(A) imposes upon a plan fiduciary the duty of loyalty – that is the duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries . . . ." The duty of loyalty entails a duty to avoid conflicts of interest and to resolve any

11
COMPLAINT
JONES, ET AL. v WAL-MART STORES, INC., ET AL.

1  potential conflicts of interest promptly when they occur.  A fiduciary must always administer a plan
2  with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the
3  fiduciaries themselves or the plan sponsor.

4   60.   ERISA § 404(a)(1)(B) also imposes on a plan fiduciary the duty of prudence that is the
5  duty "to discharge his duties with respect to a plan . . . with the care, skill, prudence, and diligence under
6  the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such
7  matters would use in the conduct of an enterprise of a like character and with like aims . . . ."

8   61.   A plan fiduciary's duties of loyalty and prudence include a duty to disclose and inform.
9  This duty entails: (1) a duty not to misinform; (2) an affirmative duty to inform when the fiduciary
10 knows or should know that silence might be harmful; and (3) a duty to convey complete and accurate
11 information material to the circumstances of participants and beneficiaries.  These duties to disclose and
12 inform recognize the disparity that may exist, and in this case did exist, between the training and
13 knowledge of the fiduciaries, on the one hand, and the participants and beneficiaries, on the other.

14  62.   The duty to inform must also be discharged in compliance with the regulatory
15 requirements of the mandatory communications, the SPD and the Summary of Material Modifications
16 ("SMM"):

> The format of the summary plan description must not have the effect of misleading, misinforming or failing to inform participants and beneficiaries.
> Any description of exceptions, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant. Such exceptions, limitations, reductions, or restrictions of plan benefits shall be described or summarized in a manner not less prominent than the style, captions, printing type, and prominence used to describe or summarize plan benefits. The advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations. The description or summary of restrictive plan provisions need not be disclosed in the summary plan description in close conjunction with the description or summary of benefits, provided that adjacent to the benefit description the page on which the restrictions are described is noted.

25  29 C.F.R. § 2520.102 2(b).

26  63.   With respect to a pension plan such as the Plan at issue here, the duties of loyalty and
27  prudence also entail a duty to conduct an independent investigation into, and continually to monitor the
28  administration of the Plan.

64. A fiduciary may not avoid his fiduciary responsibilities by relying solely on the language of the Plan's documents. While the basic structure of a plan may be specified, within limits, by the plan sponsor, the fiduciary may not blindly follow the Plan's document if to do so leads to an imprudent result. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

65. A fiduciary is liable not only for fiduciary breaches within the sphere of his own responsibility, but also as a co fiduciary in certain circumstances. ERISA § 405(a), 29 U.S.C. § 1105(a), states, in relevant part, that:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or
>
> (2) if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

66. Non fiduciaries who knowingly participate in a fiduciary breach may themselves be liable for certain relief under ERISA § 502(a)(3), 29 U.S.C. § 1332(a)(3).

## VIII. CLASS ACTION ALLEGATIONS

67. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all persons similarly situated. The proposed class consists of:

> All participants and beneficiaries of the Wal-Mart Profit Sharing and 401(k) Plan (the "Plan"), sponsored by Wal-Mart Stores, Inc. (the "Company"), from July 1, 2004 through the present, who received improperly depressed Plan contributions from the Company as a result of gender discrimination. Excluded from the Class are Defendants and their family members.

68. This action is brought and may properly be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure because there is a well defined community of interest in the litigation and the proposed class is easily ascertainable.

1   (a)   <u>Numerosity</u>: Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members is unknown to the Plaintiff at this time and the exact number of Class members is known only to Defendants and their agents, on information and belief, the Class numbers in the tens of thousands, is geographically dispersed across the United States, and thus is so numerous that joinder is impracticable. The number of Class members can readily be determined by appropriate discovery.

(b)   <u>Commonality</u>: There are questions of law and fact common to the Plaintiff and the Class that predominate over any questions that affect only individual members of the Class. Among the questions of law and fact common to the Class are:

- Whether Defendants violated ERISA, as alleged herein;
- Whether and to what extent Defendants were fiduciaries of the Plan;
- Whether and to what extent Defendants breached fiduciary duties owed to the Plan, its participants and beneficiaries;
- Whether the Defendants breached their fiduciary duties by causing or permitting the Wal-Mart to underpay required contributions during the Class Period;
- Whether Defendants breached fiduciary duties owed to the Plan and its participants by failing to act prudently and solely in the interest of the Plan and its participants and beneficiaries;
- Whether Wal-Mart breached its fiduciary duties by failing to disclose to and inform the Committee of all material matters which that Committee reasonably needed to know in order to fulfill their fiduciary duties to the participants and beneficiaries;
- Whether the Committee Defendants breached their fiduciary duties to avoid conflicts of interest;
- Whether Defendants are liable for knowingly participating in the breach of its co fiduciaries;
- Whether the Plan and the members of the Class were injured by these breaches of Defendants' fiduciary duties;
- Whether the Plan sustained losses and, if so, the proper measure of such losses;

14
COMPLAINT
JONES, ET AL. v WAL-MART STORES, INC, ET AL

- Whether members of the Class are entitled to injunctive relief; and
- Whether members of the Class are entitled to attorney's fees.

(c)  <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class. Plaintiff and other members of the Class have sustained damages and were harmed because of the unlawful activities by Defendants as alleged herein.

(d)  <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately protect the interests of the Class members. The interests of the Plaintiff are not antagonistic to, or in conflict with, the interests of the Class as a whole, and she has engaged competent counsel experienced in ERISA class actions, as well as in other class and complex litigation, to ensure protection of the interests of the Class as a whole.

(e)  <u>Superiority of Class Action</u>: Class action treatment is superior to any alternatives to ensure the fair and efficient adjudication of the controversy alleged herein. Each Class Member has been damaged and is entitled to recovery as a result of Defendants' illegal and wrongful policies and/or practices of improperly calculating wages and, in turn, Company contributions to the Plan. Class action treatment will, therefore, allow those similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of effort and expense that numerous individual actions would entail. The Class members are readily identifiable from Plan and payroll records, time records and electronic databases.

69.   Defendants' actions were uniformly applied to the entire Class as a whole. Without a class action, Defendants will retain the benefit of their wrongdoing and will continue a course of action, which will result in further damages to the Plaintiffs and the Class. Prosecution of separate actions by individual members of the Class creates the risk of inconsistent or varying adjudications of the issues presented herein, which, in turn, would establish incompatible standards of conduct for Defendants. In addition, the cost of prosecuting a single action would likely exceed the ultimate recovery.

70.   Defendants' wrongful and unlawful conduct has been widespread, recurring and uniform. Defendants knew or should have known that Plan participants' benefits were not calculated accurately. Absent a class action, Defendants will likely continue its wrongdoing resulting in further damage to the Class.

71.     This action is maintainable as a class action under each of the following provisions of Rule 23(b):

- Rule 23(b)(1)(A): The prosecution of separate actions by the members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, which would establish incompatible standards of conduct for Defendants.

- Rule 23(b)(1)(B): This ERISA breach of fiduciary duty action for plan wide relief is a classic Rule 23(b)(1)(B) class action. The prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

- Rule 23(b)(2): Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

- Rule 23(b)(3): Questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy. Since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation would make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged. Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

## IX. CAUSES OF ACTION

### COUNT I

### FAILURE PRUDENTLY AND LOYALLY TO MANAGE THE PLAN AND PLAN ASSETS

72.     Plaintiff realleges and incorporates by reference the foregoing paragraphs.

73.     As alleged above, during the Class Period, Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or de facto fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both. Thus, they were bound by the duties of loyalty, exclusivity of purpose and prudence.

74.     Yet, contrary to their duties and obligations under the Plan's documents and ERISA, Defendants failed to loyally and prudently manage the assets of the Plan. Specifically, during the Class

IEIDER WALLACE
RELL BRAYTON
:CKY LLP

Period, these Defendants knew or should have known that Wal-Mart was not paying the required amount of Company contributions to the Plan because it was miscalculating Company Plan contributions based on improperly suppressed baseline worker wage amounts.

75. Defendants breached their fiduciary duties to the Plan to prudently manage the Plan's assets by failing to respond appropriately to the underpayment of Company Plan contributions.

76. As a consequence of Defendants' breaches of fiduciary duty alleged in this Count, the Plan suffered tremendous losses. If the Defendants had discharged their fiduciary duties to loyally and prudently manage the Plan, significant losses suffered by the Plan would have been minimized or avoided. Therefore, as a direct and proximate result of the breaches of fiduciary duty alleged, the Plan lost millions of dollars of retirement savings.

77. Pursuant to ERISA §§ 409 and 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a) and 1132(a)(2) and (a)(3), Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## COUNT II

### BREACH OF DUTY TO PROVIDE COMPLETE AND ACCURATE INFORMATION TO PARTICIPANTS AND BENEFICIARIES

78. Plaintiff realleges and incorporates by reference the foregoing paragraphs.

79. At all relevant times, Defendants were fiduciaries with the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

80. The scope of the Defendants' duties included disseminating Plan's documents and/or Plan related information to participants regarding the Plan and/or assets of the Plan.

81. The duty of loyalty under ERISA requires fiduciaries to speak truthfully to participants, not to mislead them regarding the Plan or the Plan's assets, and to disclose information that participants need in order to exercise their rights and interests under the Plan. This duty to inform participants includes an obligation to provide participants and beneficiaries of the Plan with complete and accurate information, and to refrain from providing false information or from concealing information.

82. Defendants breached their ERISA duty to inform participants by failing to provide

complete and accurate information regarding the Company contributions to the Plan and by generally conveying through statements and omissions inaccurate information regarding the Company's underpayments.

83. Upon information and belief, misleading and inaccurate communications concerning the Company's Plan contributions were made in the official Plan's documents disseminated to Plaintiffs and other Plan participants.

84. Defendants' failure to provide complete and accurate information regarding the Company's Plan contributions impacted all Plan participants the same in that none of the participants received crucial, material, information regarding miscalculations concerning the Company's Plan contributions.

85. Pursuant to ERISA §§ 409 and 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a) and 1132(a)(2) and (a)(3), Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## COUNT III

## CO-FIDUCIARY LIABILITY

86. Plaintiff realleges and incorporates by reference the foregoing paragraphs.

87. ERISA § 405(a), 29 U.S.C. § 1105, imposes liability on a fiduciary in addition to any liability which he or she may have under any other provision for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if (a) he or she participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (b) he or she fails to comply with 29 U.S.C. § 1104(a)(1) in the administration of his specific responsibilities which give rise to his or her status as a fiduciary, by enabling such other fiduciary to commit a breach; or (c) he or she has knowledge of a breach by such other fiduciary, unless he or she makes reasonable efforts under the circumstances to remedy the breach.

88. If contrary to the allegations asserted previously, any of the Defendants are held not to be Plan fiduciaries, Plaintiff alleges in the alternative that said Defendants are liable as non fiduciaries who knowingly participated in the fiduciary breaches of the other Plan fiduciaries described herein, for which said Defendants are liable pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

i. That this Court certify this action as a class action under Fed. R. Civ. P. 23(a), (b)(1) and (b)(2);

ii. That this Court order that Defendants make good to the Plan its losses as a result of their breaches of their fiduciary duties;

iii. That this Court order declaratory and injunctive relief as necessary and appropriate, including restoring all losses to the Plan caused by the Defendants' breaches of fiduciary duty;

iv. That this Court order that each of the Defendants is liable for equitable relief in the form of money paid to the Plan and its participants and beneficiaries for violating their duties as fiduciaries and co fiduciaries;

v. That this Court enjoin the Defendants from further violating the duties, responsibilities, and obligations imposed upon them as fiduciaries by ERISA and the Plan's documents with respect to the Plan;

vi. That this Court award to Plaintiff reasonable costs and attorney's fees as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and other applicable law; and

vii. That this Court grant such other relief as may be just and proper, including taxable costs and interest, as provided by law.

Respectfully submitted,

Dated: July 7, 2010

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

_____
TODD M. SCHNEIDER
Plaintiffs' Counsel