IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER-JONES,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>WAL-MART STORES, INC ET AL,<br><br>　　　　Defendant.　　　　　　　　　／ | No. C 10-03005 CRB<br><br>**MEMORANDUM AND ORDER GRANTING MOTION TO DISMISS** |

　　　This putative ERISA class action follows in the footsteps of <u>Dukes v Wal-Mart</u>, alleging widespread gender discrimination at Wal-Mart stores. Plaintiff Diana Alexander-Jones alleges that Defendants Wal-Mart Stores, Inc. ("Wal-Mart" or "the Company") and the Walmart Retirement Plans Committee ("the Committee") (collectively, "Defendants") breached their fiduciary duties in connection with "the underpayment of Company contributions [to Wal-Mart's Profit Sharing and 401(k) Plan] that resulted from suppressed female employee wages due to gender discrimination." Opp'n (dkt. 52) at 4. Because those allegations are entirely dependent on a finding of discrimination and a related denial of contributions that have not yet, and might never, happen, the case is not ripe. Accordingly, the Court dismisses it.

//

//

## I. BACKGROUND[1]

Wal-Mart's Profit Sharing and 401(k) Plan is an "employee pension benefit plan" and "eligible individual account plan" as defined in ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and ERISA § 407(d)(3), 29 U.S.C. § 1107(d)(3), respectively. Wal-Mart is the Plan's sponsor. Compl. (dkt. 1) ¶¶ 1, 22, 23. The Committee is the Plan's named fiduciary and is responsible for the Plan's management and administration. Id. ¶¶ 18, 24. Committee members are appointed by a committee of the Wal-Mart Board of Directors. Id. ¶ 24.

The Plan operates in the following manner. Eligible employees may elect to contribute up to a specified percentage of their wages to the 401(k) component of the Plan, but, whether or not an employee contributes, he or she is entitled to receive a portion of the Company's 401(k) and Profit Sharing contributions, if otherwise eligible. Id. ¶ 26. Although Wal-Mart's contributions to the Plan are discretionary and can vary yearly, at the end of each year, Wal-Mart's Board of Directors has determined that the Company will contribute to the Plan. For the Plan year ending on January 31, 2008, for example, Wal-Mart announced that it was contributing two percent of eligible participants' wages to the Profit Sharing component of the Plan and two percent to the 401(k) component of the Plan. Id. ¶ 27. Plaintiff, who resides in Pennsylvania, has worked as an hourly worker for Wal-Mart. Id. ¶ 16. At all relevant times, she was a participant in the Plan. Id. Plaintiff alleges that "throughout the period of her employment at Wal-Mart, Plaintiff has been relegated to positions traditionally assigned to female employees," and that, because she is a woman, "she has been denied opportunities for advancement and higher pay." Id.

Plaintiff filed suit in July 2010, alleging that "the amounts Wal-Mart contributed [to the Plan] were materially less than what was truly owed to Plan participants, because Wal-Mart calculated its Company contributions based on base wages that were suppressed due to the Company's rampant gender discrimination." Id. ¶ 39. The Complaint further asserts that "[s]ince at least July 1, 2004, Wal-Mart has created and implemented a system that discriminates and underpays its female hourly employees nationwide by denying them

---

[1] The allegations of the Complaint are taken as true for the purposes of this Motion.

2

promotions, coveted job assignments and training and by underpaying them." Id. ¶ 40; see also ¶¶ 41-47. The Complaint explicitly references the Dukes v. Wal-Mart case, stating that "[c]urrently, female workers at Wal-Mart and Sam's Club are pursuing a class action lawsuit in this Court, Dukes v. Wal-Mart Stores, C-01-2252 (CRB), that charges that Wal-Mart discriminates against female employees nationwide. . . ." Id. ¶ 48. It adds that "[o]n June 24, 2004, this Court certified a national class of female employees who worked for the retail stores since December 26, 1998," and that "[o]n April 26, 2010, the Ninth Circuit Court of Appeals largely affirmed the district court's class certification ruling." Id.[2]

The Complaint includes three causes of action, each sounding in ERISA.[3] Count I alleges that the Defendants breached their fiduciary duties of prudence and loyalty by failing to act solely in the interests and for the exclusive purpose of the Plan participants. See generally Compl. ¶¶ 72-77. Specifically, it alleges that "during the Class period, these Defendants knew or should have known that Wal-Mart was not paying the required amount of Company contributions to the Plan because it was miscalculating Company Plan contributions based on improperly suppressed baseline worker wage amounts." Id. ¶ 74. Count II alleges that Defendants breached their fiduciary duties by making inadequate disclosures to Plan participants and beneficiaries. Id. ¶¶ 78-85. Specifically, it alleges that "Defendants breached their ERISA duty to inform participants by failing to provide complete and accurate information regarding the Company contributions to the Plan and by generally conveying through statements and omissions inaccurate information regarding the Company's underpayments." Id. ¶ 82. Count III alleges with very little detail that Defendants are liable as co-fiduciaries for failing to prevent each other's breaches. Id. ¶¶ 86-88.

---

[2] The Complaint predates and therefore does not reference the Supreme Court's recent opinion in Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2554 (2011), which reversed class certification, noting that the evidence was "worlds away from 'significant proof' that Wal-Mart 'operated under a general policy of discrimination.'"

[3] "Plaintiff seeks relief . . . under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), which authorizes a plan participant to bring a civil action against Plan fiduciaries for 'losses to the plan.' See 29 U.S.C. § 1109." Opp'n at 5.

3

1  Defendants move to dismiss. See Mot. (dkt. 50).[4]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject matter jurisdiction. "Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010). In the context of a 12(b)(1) motion, the plaintiff has the burden of establishing Article III standing to assert the claims. Id. at 1122. Nonetheless, the Court "must accept as true all material allegations in the complaint," and construe the complaint in favor of the nonmovant. Id. at 1121; see also Bernhardt v. Cty. of L.A., 279 F.3d 862 (9th Cir. 2002) ("At this stage of the proceedings, we do not speculate as to the plausibility of this allegation").

## III. DISCUSSION

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (quoting Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81 (1985)). Courts assessing whether a case is ripe are to apply a two-pronged test, evaluating (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S. 99, 105 (1977).

As to the first prong of Abbott Labs, Plaintiff argues that her claim is fit for judicial determination because the Complaint alleges a real and existing injury: "underpayment of Company contributions to the Plan." Opp'n at 6. She explains, "Those losses have already occurred. They are in the past, not the future." Id. And she concludes that her "ERISA claims do not require prior judicial resolution of [her] discrimination claims in order to be considered ripe." Id. at 7. Defendants counter that Plaintiff's ERISA claims are not yet fit for judicial determination because "they are contingent on multiple events that have not

---

[4] Defendants move to dismiss under both Rules 12(b)(1) and 12(b)(6), id., but the Court will only reach the 12(b)(1) grounds.

United States District Court
For the Northern District of California

occurred," including a judicial ruling that Wal-Mart owes Plaintiff wages due to a Title VII violation, Plaintiff's failure to obtain the benefits-related relief she seeks in the Title VII action, and the refusal of the Plan's fiduciaries to grant Plaintiff such benefits-related relief if she is awarded wages in a Title VII action. Mot. at 8. The Court agrees with Defendants, and notes that <u>none</u> of these events has occurred.

First, Plaintiff brings no Title VII claims in the present case. Nor is Plaintiff a plaintiff or a class member in any other cases alleging Title VII claims. Although she was a class member in <u>Dukes</u>, that case has been reconfigured and is now only being pursued on behalf of female employees employed in California. <u>See</u> Fourth Amended Complaint in <u>Dukes v. Wal-Mart Stores</u>, C-01-2252 (dkt. 767) ¶ 15. As Plaintiff lives in Pennsylvania, <u>see</u> Compl. ¶ 16, she is no longer a class member in <u>Dukes</u>. Plaintiff's counsel acknowledged these facts at the motion hearing, but asserted that Plaintiff had authorized counsel to initiate a Title VII case on her behalf. Even if counsel files suit tomorrow, however, that is only a first step.

Second, Plaintiff's ERISA claims depend upon a specific determination that her wages were suppressed. <u>See</u> Compl. ¶ 39 ("the amounts Wal-Mart contributed [to the Plan] were materially less than what was truly owed to Plan participants, because Wal-Mart calculated its Company contributions based on base wages that were suppressed due to the Company's rampant gender discrimination."). Plaintiff's ERISA claims are therefore tied to her (unpleaded) Title VII claims. <u>See, e.g.</u>, <u>Cavallaro v. UMass Mem. Health Care, Inc.</u>, No. 9-40152, 2011 WL 2295023, at *7 (D. Mass. June 8, 2011) ("if plaintiffs cannot prevail on their claims regarding overtime compensation practices, they cannot establish that defendants failed to maintain an accurate record of additional hours worked or to make contributions based on the house to the plan. Success on the FLSA claim therefore is a predicate to success on the ERISA claims"); <u>Davis v. Abington Mem. Hosp.</u>, — F. Supp. 2d —, 2011 WL 4018106, at *5 (E.D. Pa. Sept. 8, 2011) ("Because Plaintiffs have failed to allege a FLSA violation, these [ERISA fiduciary duty] claims also fail").

      Where courts have declined to dismiss similar ERISA claims as unripe, they have often found it significant that the wage claims (often FLSA and not Title VII) were also pending before them. See, e.g., Stickle v. SCI Western Market Support Center, No. 080083, 2008 U.S. Dist. LEXIS 83315, *46 (D. Ariz. Sept. 30, 2008) (rejecting defendants' argument that "Plaintiffs' ERISA Claims are unripe because they are derivative of, and entirely dependent upon, Plaintiffs' FLSA claim, which Plaintiffs have yet to establish," because "the only delay in the Court's ability to consider Plaintiffs' ERISA claims is that it must first rule on Plaintiffs' FLSA claim"); Rosenburg v. Int'l Bus. Machines Corp., No. 09-430, 2006 U.S. Dist. LEXIS 41775, *27 (N.D. Cal. June 12, 2006) ("The court agrees with IBM that plaintiffs will need to establish a violation of the FLSA. However, the fact that plaintiffs will need to establish the merits of their FLSA claims does not necessarily render their ERISA claims unripe"); In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig., No. 33-1439(B), 2005 U.S. Dist. LEXIS 42706, *2 (D. Or. Aug. 15, 2005) ("I will hold the ERISA claims in abeyance, with no further action, pending a ruling on the overtime liability issues that are central to this multidistrict litigation."). That is not the case here.

      Third, only once there is a specific determination that Plaintiff's wages were suppressed, and Plaintiff is awarded lost wages, are the Plan's fiduciaries obligated to make specific contributions to the Plan on Plaintiff's behalf. Under the Plan, employer contributions are to be allocated based on compensation actually paid, not compensation "earned" or "owed." See, e.g., Serron Decl. (dkt. 51) Ex. C ¶ 3.1(4) ("The Qualified Non-Elective Contribution shall be in an amount equal to the same percentage of all Participants' Compensation eligible to share in an allocation"); ¶ 1.10 (defining "Compensation" as "the total salary, commissions, earnings or wages paid during any Plan Year," and reiterating that "[o]nly Compensation paid while an Employee is a Participant shall be recognized by the Plan for Plan purposes.") (emphasis added). Accepting, as the Court must, the Complaint's allegations that there was widespread gender discrimination at Wal-Mart that suppressed female employees' base wages, see Compl. ¶ 39, until Plaintiff is paid those wages, Plaintiff's challenge to the resulting employer allocations is unripe based on the language of

6

1 the Plan. The Plan fiduciaries might still make the appropriate allocations, obviating the
2 need for a lawsuit. If they do not, they will be in breach of their fiduciary duties. None of
3 this has yet occurred.[5]

4      Such reasoning is consistent with the recent holding in Chie v. Reed Elsevier, Inc.,
5 No. 11-1784, 2011 U.S. Dist. LEXIS 99153, at *18-20 (N.D. Cal. Sept. 2, 2011). In Chie,
6 2011 U.S. Dist. LEXIS 99153, at *18, the plaintiffs alleged that defendants breached their
7 fiduciary duty by failing to credit compensation due to unpaid wages. The defendants argued
8 at the hearing that "contributions cannot be made until the unpaid wages are actually paid to
9 Plaintiffs, and the exact amount of unpaid wages is under litigation in this action." Id. That
10 plan defined "compensation" as "the total renumeration . . . paid." Id. The court agreed with
11 the defendants that "the 'trigger' for a contribution to the plan is an actual payment of
12 compensation," and that, as none of the compensation at issue in the case had been paid, the
13 ERISA claim was "premature." Id. at *19 (further holding "[b]ecause there has been no
14 determination as to what exact wages are owed Plaintiffs, and accordingly no payment of
15 wages to Plaintiffs . . . there can be no breach"). The court dismissed the claim but held that
16 "[i]f, after any unpaid wages are paid to Plaintiffs, Defendants fail to make the necessary
17 contributions, then Plaintiffs may assert a claim for breach of fiduciary duty." Id. at *20.
18 Here, as in Chie, that final contingency – the Plan fiduciary's refusal to pay the required
19 contributions once any unpaid wages were paid – might never happen. That is the definition
20 of unripe. See Bova v. City of Medford, 564 F.3d 1093, 1096 (9th Cir. 2009) (finding case
21 unripe where "[i]t is possible that neither . . . [contingency upon which plaintiff's alleged
22 injury depended] will occur").

23      In sum, then, Plaintiff has no Title VII claims pending before the Court. Even if she
24 brought one, as she has expressed an intent to do, these ERISA claims are contingent on that
25 case, and would be unripe pending its resolution and the Plan fiduciary's failure to make the
26 required allocations. See In re Lowenschuss, 170 F.3d 923, 932 (9th Cir. 1999) ("Because

---

28 [5] Given that reality, it is not even clear to the Court how Plaintiffs would have this case proceed: the notion of a trial within a trial to decide whether there is discrimination against women at Wal-Mart is unappealing.

7

1 Sun's claim against the Pension Plan is contingent on the outcome of this undecided appeal,
2 we decline to reach this issue as it is not yet ripe for review"). Her ERISA claims are
3 therefore not fit for judicial decision. To the extent that Gerlach v. Wells Fargo & Co., No.
4 05-585 CW, 2005 U.S. Dist. LEXIS 46788, at *7-8 (N.D. Cal. June 13, 2005) and King v.
5 Wal-Mart Stores, Inc., No. 07-1709 PMP, available at Johnson Decl. (dkt. 53) Ex. A, hold to
6 the contrary, this Court declines to follow them.[6]

7 As to the second prong of Abbott Labs, Defendants argue that Plaintiff faces no
8 hardship if her case is found to be unripe, because she has expressed no intention to (retire
9 and) withdraw funds from the Plan anytime soon. Mot. at 11. Plaintiff makes a vague claim
10 of hardship but offers no details to support it. See Opp'n at 7 ("Plaintiff will suffer hardship
11 if her ability to redress Defendants' ERISA violations, which have reduced the receipt into
12 her Plan, is delayed."). Accordingly, Plaintiff has not met either the fitness for judicial
13 decision, nor the hardship, prongs of Abbott Labs.
14 //

---

[6] In Gerlach, 2005 U.S. Dist. LEXIS 46788, at *6, the court rejected the notion that "[u]nder Defendant's interpretation of the Plan, a Plan participant could earn wages that qualify, under terms of the Plan, as certified compensation, but could be deprived of the corresponding pension credits if Defendant illegally withheld those wages." Id. at *7. Plaintiff makes a similar argument here: "[t]aking the defense position to its logical extreme, if Wal-Mart, acting in the capacity as an employer, illegally failed to pay its employees at all for the work they performed, Wal-Mart, as an ERISA plan fiduciary, could simply do nothing." Opp'n at 16. So be it. If an employer withholds all payment from its employees, the employees can sue; just not, initially, under ERISA. See Desilvia v. North Shore-Long Island Jewish Health Sys., Inc., 770 F. Supp. 2d 497, 544 (E.D.N.Y. 2011) ("violations of the wage and hour laws should be remedied under the FLSA, not ERISA."); see also Steavens v. Elec. Data Sys., No. 07-14536, 2008 U.S. Dist. LEXIS 61581, *7-16 (E.D. Mich. Aug. 12, 2008) ("ERISA is designed to accomplish many worthwhile objectives, but the regulation of purely corporate behavior is not one of them.") (citing Akers v. Palmer, 71 F.3d 226, 229 (6th Cir. 1995)); Henderson v. UPMC, 640 F.3d 524, 530 (3d Cir. 2011) ("Gerlach is an outlier in refusing to follow the plan language and we decline to follow it.").
In King, No. 07-1709 PMP, the court rejected Wal-Mart's argument that "Plaintiff's claims are not ripe because they rely on the resolution of litigation against Wal-Mart establishing Wal-Mart actually engaged in unfair wage and hour practices." Johnson Decl. (dkt. 53) Ex. A at 10. The court found, instead, that "the Complaint has alleged completed acts or omissions." Id. at 11. This Court cannot agree with that holding in light of the contrary authority discussed herein, and particularly given both the language of the Plan here, and the inevitable trial-within-a-trial that would result in proceeding on an ERISA claim without a predicate discrimination finding.
The analysis of Chie, 2011 U.S. Dist. LEXIS 99153, is more persuasive.

8

**IV. CONCLUSION**

For the foregoing reasons, the Court finds that the case is not ripe and GRANTS the Motion to Dismiss under Rule 12(b)(1).

**IT IS SO ORDERED.**

Dated: January 24, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE